As you can see, my colleagues aren't able to be here this afternoon, but they will be listening to an oral argument, which is being recorded. So I assure you that they'll have a chance to hear your arguments, and it was just, of course, a set of circumstances they couldn't be here today. And for me, I haven't been sitting, I was a trial judge for 28 years, so this is the first time I've been sitting by myself for a while on a public court. So, you may proceed. Good afternoon, your honor. Mr. Boland, may it please the court. My name is Mark Stephan. I represent the petitioner in this dissolution of marriage action. I apologize for not clearly stating what I think the standard of review is. I, myself, still am somewhat confused in that regard. The third district court, in the case of In Re. The Marriage of Murphy, which is cited by Mr. Boland, does reference the de novo standard when dealing with the interpretation of a statute such as, in this case, the statute regarding child support. And in the decision dealing with stock, the court said the decision was that the trial court erred, and when dealing with the issue of gifts, said that it was an abuse of discretion, and when dealing with the issue of bonus, said the court erred. I believe that regardless of the standard, even if the court uses the abuse of discretion standard, that the trial court erred in its decision. This is not a new situation in trying to determine what is income and what is an appropriate deduction from income and arriving at net income for the purposes of determining child support. The situations are complicated by self-employed persons, which is what we have in this case. Of course, they've been divorced with self-employed people for a long time. For a long time, Your Honor. And the statute provides for income from all sources, and then allows for reducing that income from all sources for certain specific items. The problem comes, as is pointed out in the case of Tagler or the dissent in Gay, that when you deal with things like the cost of goods, or in this situation, it could be labor, or the insurance, work-stop insurance for that labor, because the statute doesn't address those things. But in the Illinois Supreme Court decisions, Murphy, I'm sorry, McGrath, which was a 2012 decision, and Rogers, which was a 2004 decision, both which used the de novo standard, it would appear that what is requested that the trial court do is to take this data and, using that guidelines of the statute, make a determination. Then once that determination of net income and the guideline support has been made, then the court can deviate from that by just explaining why. So the cases are all over in different ways that it's been done. And in the case at Barr, the trial judge… Abuse of discretion standards are very difficult. Abuse of discretion is a difficult standard. In the case at Barr, the court, after the motion for reconsideration, did identify a net income figure, but it was unclear, at least to me, how that figure was arrived at. And I attempted to work it backwards and really could not find a way to do it. But the undisputed evidence was that the gross receipts, or the deposits that were made into two accounts that Mr. Illum identified as being his business accounts, one a main one and one another one, were $190,000 in a year. Which did not at all correspond with what was identified on the tax return as his income, which was $100,000 short of that. The court, in its decision, said it was taking only the deposits that were made into the main business account. The court did not explain why it was not taking the income or the deposits that were made into the secondary business account. The court went on to say that, and then it was making an adjustment for weather conditions for the year 2012, or between 2011 and 2012. But there was no figures given or computations to identify what periods of 2012 were used or what periods of 2011 were used. And I think the court then went on to say that she reduced the figure by all of the expenses identified in the respondent's Schedule C associated with that business. There have been many cases that say, no, depreciation can't be done. There are many, the Gay case says, hey, you can't deduct anything unless you can show it's for a debt, and you've got to show it's reasonable and necessary. Which in the case, one of the cases cited by counsel, the Worrell case, this is a case where the truck driver was getting a per diem. That court said, you know, we're not going to reward people for bad bookkeeping. If somebody has the ability to show that they actually used the money or the income for expenses, we're going to allow that. If you can show it's reasonable and if you can show it's necessary. In this case, the respondent made no efforts to show that his expenses identified on the Schedule C were either reasonable or necessary. The petitioner testified that while she paid bills, she knew that some of the bills that were paid by the business were for family expenses. The respondent acknowledged that, you know, any one of their vehicles, the vehicle that the petitioner used to get to and from her job or the ones that he would use or that the family would use, any one of them could at any given time be used for a drive-by and doing an evaluation. As I understand it, until she left the Maryland residence, she did, she was the bookkeeper, right, or she did the books? She paid bills, which is essentially, at that point in time, what she was doing was paying some bills. So bills would be presented to her in some fashion. She would write checks, but she was not a bookkeeper. Mr. Billum testified the way he managed his books and his tax return. Like I say, she was involved in maintaining the books because she paid the bills, right? That's exactly right. She paid, essentially what she did is she wrote checks. Bills would come in, she would write checks. And then from those books, they would make determinations. Well, from those bills, she knew that she was paying bills for the repairs that was done on the car that she was using or that gas, the gas that was feeding those cars was being paid out of the business accounts. And that's the records the accountant would have for the tax purposes. Well, what the respondent said was, at the end of the year, he tells the accountant what his income was. And then he gathers for the accountant the things that he believed were expenses or deductions. But there was nothing about presenting books or records, such as in – I think it was the – I think it was the Rogers case, if I'm wrong. But in one case, the man was running a farming operation. And that court said, yeah, we're going to allow the deduction of all these things aside from depreciation. We're going to allow those because his records that he kept were very detailed, showing each expense, who it was paid, the date, the check number. In this case, there was none of that. All there was was the tax return with the Schedule C. There was no identification of what the expenses were for or actually who they were paid to. It was just the Schedule C. The records – so initially, the position is this. The deposits that were made into just the business accounts were $190,000. So even if all of the Schedule C deductions, including depreciation, was taken out of there, it would still be about $90,000 of net income from which to determine support. That does not include income that was received by the respondent for two children of another marriage. It was SSI, another amount, and then there was – sometimes there was money that came through the SDU. All in all, it was about $900 a month that the respondent received for the support of two children that lived with him. Social Security disability? Yes. Now, the court included those amounts in income, which I think technically the statute does say, income from all sources. Unless it could be argued – it was not, but it could have been argued – this isn't his money. It's not the respondent's money. It's for the children, which I think would have been an appropriate way to deal with that situation. Once all the calculations were done, to say, you know what, this $900, I'm pulling out. I'm not going to include it in net income because it's providing for the support of these children. And that would have also then dealt with the needs of the noncustodial parent in this situation. Now, the 505 factors, once you start with the net income, then you still are supposed to apply all these 505 factors in making a decision about what's an appropriate support amount. So Mr. Illum's own needs and the needs of his children do fit in there. And my suggestion is it would have been, in this situation, I think a fairer thing to do is just said, hey, that money that's coming in for the kids will satisfy this issue that he has children that he also supports in his home. And then we'll pull that out of there and then we can deal with the rest as net income. That's the last two minutes. Thank you. The other issue that I think is very important is the classification of property, which I believe is a manifest way to the evidence standard of review. In this case, it was not disputed that almost all of the property, all the assets, with the exception of the ones that were clearly identified, were purchased or came in during the course of the marriage. And they deserve the presumption that they were marital property. The trial court took the attitude that Mr. Illum had a business before he was married, so those were, even though they were acquired after their marriage, they remain non-marital property. I think that avoids the presumption, or avoids the presumption. In addition, this was a partnership. This marriage was a partnership. And they both worked in that business. And neither one of them brought home paychecks from it. But they used the business to provide for themselves. So they, it was their own work from which the income from that business came. And so, it's marital property. It's presumed to be marital property the way it comes in. And there was no evidence offered by the respondent to rebut that. And before they were married, that business existed? Before they were married, a landscape or a lawn-cutting business wasn't existing. That's what Mr. Illum did, a lawn-cutting business. But in fact, even the first snow blade that was purchased for this business was purchased on the petitioner's credit card. And the petitioner cut lawns and blew debris and worked the business. In fact, brought in a section of business for a while that came from Joliet, from outside the area that they were working. So it was clearly a marital business, even though it was his business before. And it's a business, but it's not a LLC. It's not a corporation. The debts were in the names of the parties. So it was a business, but it was not a separate entity. It was really this partnership that came with the marriage. He had it before, she came in, they worked it together. They brought it from, according to the tax returns, like an annual income of $35,000 up to reported $90,000. But when you… Thank you, Counsel. Thank you, Judge. Counsel, may I please have a report? From the standpoint of the record, my name is Christopher Bolden. I represent Brian Ellum, who is the respondent in this case. What you have before you, Your Honor, is a case, an appeal, in which essentially two issues are raised. One issue is that the trial court should have ordered more child support. And the second issue is that the trial court should have re-designated a business property. But that does not suggest that there should be any re-designation of how the award of that business property should have occurred. In this case, you have a marriage in which the past, the previous four to five years had seen them incur substantial debt, where they did not have sufficient funds to meet the needs of their own households, nor of the business, because the debt increased in each of the years prior to the separation. What the trial court looked at in this case was, and we believe this case is an abuse of discretion issue. And this court and all of the other district, or the other appellate courts in this state, have indicated that the discretion of the trial court on these issues is not going to be disturbed absent some abuse of discretion. More importantly, you're being asked in this brief of the appellant to review and re-determine the credibility of witnesses and change the findings of the trial court based upon the credibility of witnesses. And this court and all of the other appellate courts have deferred to the trial court's finding regarding credibility of witnesses and findings regarding the determination of the award of assets and the determination of child support. The first question, I think, in terms of looking at this case is, what was the business? Well, the business was affordable lawn care. Affordable lawn care, by the testimony of both parties, existed before the marriage and it existed during the marriage. It appears to argue that because of the involvement of both spouses in the business after the marriage, that the business transmuted into this, there was a transmutation into the marital asset. I believe that is their argument. And the trial court directly dealt with that particular issue when she found that while there were efforts put forth by the petitioner, the petitioner got the benefit of those efforts because they enjoyed the benefits of the income, all of the income of that business during the course of their marriage. Further, there was no increase in value shown in the assets of the business from the time of the marriage until the time of the divorce. So the fact that there was some property, some equipment put into the business, there was still, there was debt in the business now that there had not been before. The trial judge found, if I remember correctly, there was no appreciation of the assets of the business. That's correct. Because of the, you know, tit for tat sort of asset for equipment for debt. That's correct. And so it evened out, so no appreciation. That was the finding of the trial court. That was the finding of the trial court, specifically. But your opponent argues that the business was enhanced in the income of the business because of the joint efforts of the parties appreciating, the earnings appreciated. I would say that the earnings, the gross income did increase over time. The net income is signed by the last tax return when they were living together. And this is the tax return where Mrs. Zillow took the information and met with the accountant. She signed all the tax returns. She signed all the tax returns. She agreed to all the tax returns. And in that last tax return, including, and it does include depreciation, the net income from the business is $2,518. Now, if you add in depreciation, the net income of the business, the depreciation is roughly $6,500. So the net income is roughly $9,000 for the business, assuming that the deductions, the Schedule C deductions, the number I just gave you is for income tax purposes. I concede that there are cases that say you can't just use Schedule C deductions for purposes of evaluation. And I concede also that the Gay case would hold that you can't use any deductions against business income, which is in my, I'm arguing here that that's a silly result, because that means that if you're a corporation, you get the benefit of all the deductions. Whereas if you're a sole proprietor, you get the benefit of no deductions. And I think the Tagler court is correct when it says then you're basing your finding on income that was really never received by the person who owns the business, because while it came in, it was immediately paid out for labor, for the cost of gasoline, for the cost of doing business. So I think the Tagler argument, at least, it reflects the reality of life in the business world, whereas the Gay decision, we would argue, does not. Of course, as a practitioner handling, I'm sure, many different divorces, there are many different circumstances of how those things are accounted for. Oh, absolutely. Absolutely. And some are found more realistic than others. Right. And in this case, the trial court found them to be realistic. And I don't think that finding, there's any basis in the evidence to say that the trial court's finding in that was contrary to the evidence or was an abuse of discretion. So it's our position that her findings on those issues were appropriate and did not constitute, in no way did she abuse her discretion. The trial court did deviate from the statutory minimums, no question, in terms of the child support. She did that based upon her finding that Mr. Ilham had two children from his previous marriage of which he had custody. Would you say that was a substantial deviation? I think if you use her figures, the trial court's figures, she deviated by, instead of 20%, she found 10% as support. So, sure, that's a substantial deviation. I wouldn't argue with that. But she also found that there was the opportunity that both parties had the benefits of certain, both had free health care, for example, both had, Mrs. Ilham was living with her mother, essentially it's what she said she paid rent. There was no proof of any rent ever paid during the course of the time that she lived there. And the trial court found that because of the substantial needs dealing with one of Mr. Ilham's children, that it justified the deviation. And again, the issue is whether that's an abuse of discretion based upon the findings that she made and the circumstances of the evidence. And we would argue that it's not. Finally, in the question of the business, it's our position that even if it was entirely a marital asset, which we don't concede that it was, but for argument purposes, if the business was entirely a marital asset, it was appropriate that it be awarded to Mr. Ilham in any event. It is his sole source of income. Meanwhile, Mrs. Ilham has pursued and has obtained a degree and is working as a counselor, although she made a choice to diminish her income by moving from one place to another. But for whatever reason, that's her privilege. But she has a steady salary, a steady income. Her income is not affected by the vagaries of too much snow, not any snow or drought or too much rain. So it's our position, Your Honor, that the trial court correctly made the findings, correctly made the decision, and there is no showing in this case of any abuse of her discretion. Thank you. Counsel? Thank you, Your Honor. The trial court did not include all the income, did not explain why it didn't include the income. When the explanation of how the net income was arrived at, only one account was used, even though the business had a secondary account, which had $20,000 in it. The court also made some kind of an adjustment because of weather conditions of which there was no evidence at trial, but used the entire expenses from 2011. So when the court made this decision, it apparently adjusted income downwards, believing that there had been a bad year for cutting grass without considering other irrigation or whatever else somebody might do that wants to care for their lawn and because of a lack of snow, but didn't adjust down the expenses, which would include labor or expenses dealing with the equipment that might actually be used in snow removal or in lawn care. There was no evidence in regards to the Schedule C expenses as being necessary or reasonable. They were just there. So I think clearly the court erred because it didn't include all the income and makes no explanation of why all the income wasn't included. And comes to a figure of net income without explaining the figures behind it. $1,200 or $1,800 a month was the judge's determination of the income that came in from this business, which had deposits into business accounts of $190,000 in a year. And that was in the year immediately preceding the filing of this divorce. For the year 2011, the divorce was filed in January 2012. The income that a spouse gets from working in a business is marital income. The property that was purchased and used in the business, which the property that the party said the business started out with was a truck and a walk-behind mower. The property that had been acquired during the marriage was identified at trial substantially more than one truck and a walk-behind mower. So I believe that the trial court has committed an abuse of discretion by not including all the income, by allowing or deducting from that income things like depreciation, but essentially anything which the respondent didn't prove was a reasonable and necessary expense for the production of that income. And the court also erred in by not honoring the presumption of marital property or all property acquired after the marriage except for the specifically identified ones. Thank you, Your Honor. Thank you, Counsel. As I indicated when we started, my two colleagues unfortunately weren't able to be here today. But they will be listening to the oral arguments that have been recorded. And there will be a decision prepared and rendered with dispatch in the near future. The court now will take a recess until tomorrow's court. Thank you very much for your arguments. Have a safe drive back.